286 F.2d 484
 ULSTER OIL TRANSPORT CORP., as owner of the Barge THE DWYER
NO. 105, Libellant-Appellee,
v.
THE Tug MATTON NO. 25, Matton Oil Transfer Corporation,
Claimant-Appellee, and THE Tug RUSSELL NO. 20,
Russell Bros. Towing Co., Inc.,
Claimant-Appellant.
 No. 120, Docket 26099.
 United States Court of Appeals Second Circuit.
 Argued Dec. 13, 1960.
Decided Jan. 26, 1961.
 
 Edward Ash, New York City (Alexander, Ash & Schwartz, New York City), for claimant-appellant.
 Frank Mason, New York City (Mahar & Mason, New York City), for claimant-appellee.
 Macklin, Speer, Hanan & McKernan, New York City, Charles J. Carroll, Jr., for Ulster Oil Transport Corp., libellant-appellee.
 Before LUMBARD, Chief Judge, and SWAN and MOORE, Circuit Judges.
 LEIONARD P. MOORE, Circuit Judge.
 
 
 1
 Libelant, Ulster Oil Transport Corp. (Ulster), as owner of the barge Dwyer No. 105, brought this action in rem against the tug Matton No. 25 (Matton) and the tug Russell No. 20 (Russell) for damages sustained by its barge resulting from a collision. The only question before the trial court was whether the tugs were jointly liable or whether there was sole liability. From so much of an interlocutory decree which held the Russell solely liable and dismissed the libel against the Matton, theRussell appeals. As in most collision cases, the errors urged center around an alleged misapplication of certain navigational rules and an improper resolution of the factual issues.
 
 
 2
 The scene of the collision was the Mohawk River section of the Erie Canal; the time, the afternoon of July 28, 1957. The Matton was pushing the barge Dwyer No. 105 eastbound; the Russell pushing the barge Valco No. 2 westbound. A slight bend in the river and shrubbery on the northern bank were responsible for a lack of visual awareeness by each of the approachof the other. Somewhat west of the collision point, a railroad drawbridge crossed the river, which added to the navigational problem. A lookout was stationed on the bow of the Matton's barge; there was no lookout on the Russell's barge.
 
 
 3
 The trial court accepted as a fact that the Matton blew a bend whistle one-half mile west of the drawbridge. Receiving no response, it proceeded through the northerly (its port) draw which was customary practice. Upon sighting the bow of the Valco No. 2 as it emerged around the bend, the Matton blew one blast indicating a port-to-port passage. There is testimony that this understanding was confirmed by one blast from the Russell. The Russell has misconstrued the trial court's opinion in arguing that the court found that there was no answering blast. The statement by the court that 'The Russell did not return any signal * * *' is merely in the court's recital of the Matton's version. Although this would seem to be an inaccurate representation of the Matton's version, it is not a finding of fact.
 
 
 4
 After proceeding through the draw, the Matton turned to the starboard to be on the proper or southerly (going east) side of the channel. In fact, it went so far to starboard as to come into contact with the south bank of the river. The Russell on the other hand failed to keep to its side (or northerly going west) of the channel. Crossing the channel the port bow of the Valco No. 2 struck the port side of the Dwyer No. 105.
 
 
 5
 Upon the law and the facts, the Russell was solely liable. The Matton was justified in using the northerly draw. The chart shows that the center line of the channel was north of abutment separating the draws so that the Matton was about in mid-channel. This use of the northerly draw was in no way responsible for the collision. Its maneuver in straightway seeking the southerly side of the channel was proper and should have been expected by the Russell, particularly after the one blast (port-to-port) signal. The Russell was at fault for failing (1) to have a lookout; (2) to keep to its side of the channel after rounding the bend; (3) to sound a bend whistle; and (4) to make a port-to-port passing. Preparatory to going through the draw, the Russell should have been on the northerly (its starboard) side of the channel.
 
 
 6
 The many cases cited by appellant disclose such substantial differences in the facts from the situation here presented that they are neither applicable nor persuasive. There is no concession or finding that the Matton turned to starboard without receiving any answering signal to its one blast. Infact and to the contrary, there is testimony that it did receive a one-blast response. Appellant's narrow channel rule point is without merit. Having grounded against the southerly bank, it is difficult to imagine how the Matton could have kept more to its starboard side. Now is the Russell's liability premised solely upon its failure to blow a bend whistle although the trial court was entitled to take this fact into consideration.
 
 
 7
 Upon all the facts, the trial court properly concluded that the Russell was solely liable and the interlocustory decree is affirmed.